THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RICARDO RODRÍGUEZ PÉREZ,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **DR. MIGUEL E. ABREU GARCIA,** *et al.*, <br><br> *Defendants.* | Civ. No. 21-01622 (MAJ) |

## OPINION AND ORDER

On December 21, 2021, Ricardo Rodríguez-Pérez ("Rodríguez") and his father, Victor Rodríguez (collectively "Plaintiffs") commenced this action against Dr. Miguel E. Abreu ("Dr. Abreu") and Hospital Español Auxilio Mutuo de Puerto Rico, Inc.,[1] (collectively "Defendants") alleging claims of medical malpractice under Puerto Rico state law.[2] (**ECF No. 1**). Pending before the Court are both parties' Motions in Limine. (**ECF Nos. 64, 79, 80**). For the reasons stated hereafter, Plaintiffs' Motion in Limine (**ECF No. 64**) is **GRANTED IN PART** and **DENIED IN PART**, and Defendants' Motions in Limine are **DENIED** (**ECF Nos. 79, 80**).

I. Background

On April 19, 2022, Plaintiffs filed the operative Amended Complaint. (**ECF No.**

---

[1] On January 16, 2024, Plaintiffs and Hospital Español Auxilio Mutuo de Puerto Rico filed a "Stipulation of Partial Voluntary Dismissal with Prejudice" and this Court entered a partial judgment that same day. (**ECF Nos. 66 and 67**). Dr. Abreu's insurance company, Puerto Rico Medical Defense Insurance Company, has since been added as a party. (**ECF No. 20).** Thus, the only remaining Defendants are Dr. Miguel E. Abreu and Puerto Rico Medical Defense Insurance Company.
[2] Under 28 U.S.C. § 1367(e) "the term 'State' includes … the Commonwealth of Puerto Rico" and will be referred to as such for the purposes of this Opinion and Order. 28 U.S.C. § 1367(e).

**19**). Plaintiffs allege that on February 2, 2021, Dr. Abreu performed a catheter heart ablation on Rodríguez at Hospital Español Auxilio Mutuo. *Id*. at 3 ¶ 14. During the heart ablation procedure, Dr. Abreu allegedly punctured Rodríguez's Inferior Vena Cava (IVC). *Id*. ¶ 17. As a result, Rodríguez was required to undergo emergency open heart surgery, resulting in intense physical pain and mental anguish, as well as a permanent scar on his chest. *Id*. ¶ 18; *Id*. at 5 ¶ 28.

Rodríguez also claims Dr. Abreu did not obtain his informed consent for the procedure, because he did not meet with him to discuss the risks and benefits of the ablation, alternatives to foregoing the procedure, and "whether or not there were other alternatives such as noninvasive treatment(s)." *Id*. at 5 ¶ 25. Rodríguez is seeking $1,000,000 in damages, and his father Víctor Rodríguez, is seeking $250,000 for the suffering he has experienced as a result of the purported negligence against his son. *Id*. ¶¶ 28-31.

## II. Discussion

Before the Court are motions in limine filed by both parties—Plaintiffs' sole motion (**ECF No. 64**) and Defendants' two motions (**ECF Nos. 79, 80**). Each will be addressed in turn.

### a. Plaintiffs' Motion in Limine

Plaintiffs' Motion in Limine ("Plaintiffs' Motion") seeks two outcomes from the Court. First, that the Court prohibit Defendants' medical expert from testifying on Plaintiffs' expert's opinion due to his alleged failure to review Plaintiffs' expert's report. (**ECF NO. 64 at 3**). Second, that the Court exclude Defendants' medical expert's testimony altogether, on grounds that it is not relevant and will likely confuse the jury. *Id*.

at 5. After a thorough review, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion.

Beginning with Plaintiffs' first request, Plaintiffs allege that Defendants received their expert, Dr. Heather Bloom's ("Dr. Bloom's) report, on June 15, 2023. (**ECF No. 64 at 3 n. 2**). Thereafter, Defendants' expert, Dr. Edwin Rodríguez-Cruz ("Dr. Rodríguez"), issued his report on July 17, 2023. *Id.* at 3. Plaintiffs aver that Defendants' expert makes no mention of Dr. Bloom's report, her opinions, and conclusions in his, and thus, he should be prohibited from testifying as to it at trial. *Id.* Notably, Plaintiffs maintain they are not seeking relief under *Daubert*,[3] and make no formal challenge to the Defendants' expert's qualifications. *Id.* at 1.

In response, Defendants contend that "[t]here is nothing that would bar an expert from hearing the testimony of another expert in [t]rial and then commenting on the same when he or she is called upon to testify." (**ECF No. 72 at 7 ¶ 18**). In support, they state, "[a]ccording to Federal Rule of Civil Procedure 703, it is permitted for an expert to base opinion testimony on personal knowledge, *evidence admitted at trial*, or evidence not admitted, so long as it supplies the kind of facts or data that experts in the field reasonably rely on in forming an opinion."[4] *Id.* (emphasis in original). Plaintiffs maintain that what Defendants propose would be in contravention of the expert report requirements of Fed. R. Civ. P. 26. (**ECF No. 75 at 3 ¶ 10**). The Court agrees.

---

[3] *See Salgado-Colón v. Hosp. Hermanos Meléndez, Inc.*, 19-cv-01797, 2023 WL 185900, at *2 (D.P.R. Jan. 13, 2023) ("More specifically, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court designated trial judges as gatekeepers responsible for determining whether Rule 702's requirements are met in any given case. The Court possesses broad discretion to determine whether proffered expert testimony meets *Daubert*'s requirements for admissibility.") (internal citations omitted)); *see also United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) ("This rule imposes a gate-keeping role on the trial judge to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'") (citing *Daubert,* 509 U.S. at 597)).

[4] Defendants cite the *advisory notes* of Federal Rule of *Evidence* 703. *See* Fed. R. Evid. 703.

Under Rule 26 of the Federal Rules of Civil Procedure ("Rule 26") an expert report must "contain: (i) a complete statement of *all opinions* the witness will express and the basis and reasons for them; [and] (ii) the facts or data consider[ed] by the witness in forming them . . . ." *Rodríguez v. Torres*, 11-cv-1602, 2015 WL 1138256, at *6 (D.P.R. Mar. 13, 2015), *aff'd sub nom. Santos-Rodríguez v. Seastar Sols.*, 858 F.3d 695 (1st Cir. 2017) (emphasis added); s*ee also* Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).

One of the purposes of Rule 26, is to "avoid trial by ambush." *Curet-Velázquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 56 (1st Cir. 2011) (cleaned up); *see also Rodríguez,* 2015 WL 1138256, at *6 ("The purpose of the expert disclosure rule is 'to provide opposing parties reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses.'") (citing *Rembrandt Vision Techs., L.P. v. Johnson,* 725 F.3d 1377, 1381–82 (Fed. Cir. 2013)). "Rule 26(e) instructs parties that expert disclosures 'must be kept current.'" *Vargas-Alicea v. Cont'l Cas. Co.,* 15-cv-1941, 2020 WL 3470325, at *7 (D.P.R. June 25, 2020) (citing *Macaulay v. Anas*, 321 F.3d 45, 50 (1st Cir. 2003)). "Thus, based on the expert disclosure rule, courts routinely confine expert witnesses to testifying about the opinions that are contained within their original expert report or a timely-filed amendment or supplement." *Rodríguez,* 2015 WL 1138256, at *6 (collecting cases).

The First Circuit has looked to a variety of factors in assessing an error under Rule 26, including "the conduct of the trial, the importance of the evidence to its proponent, and the ability of the opposing party to formulate a response." *Curet-Velázquez*, 656 F.3d 47 at 56. "Surprise and prejudice are important integers in this calculus." *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003).

Put simply, the Court will not permit Defendants to circumvent the discovery and disclosure process by allowing Dr. Rodríguez to testify beyond the bounds of his expert report. To allow otherwise would be highly prejudicial to Plaintiffs. *See Prouty v. Thippanna*, 541 F. Supp. 3d 131, 135 (D. Mass. 2021) ("Complete and timely disclosures and supplementation ensure an even playing field, preventing any party from gaining an 'unfair tactical advantage' at trial.") (citing *Lohnes v. Level 3 Comm., Inc.*, 272 F.3d 49, 60 (1st Cir. 2001)); *McNally v. Riis*, 18-cv-1150, 2020 WL 209141, at *5 (S.D. Cal. Jan. 14, 2020) ("Moreover, to allow defendant's expert to offer opinions he did not include in his report and that the [p]laintiff had no chance to review and possibly rebut would be contrary to Federal Rule of Civil Procedure 26(a)(2)(B)(i) and highly prejudicial to [the] [p]laintiff.").

It is undisputed that Dr. Rodríguez had one month to review Dr. Bloom's report before issuing his, and he chose not to comment on it. Thereafter, Dr. Rodríguez had over two months to supplement his report if he so chose, which he did not. Defendants have provided no reasonable explanation as to why commentary on Dr. Bloom's report could not have been proffered before now, the eve of trial. Bearing in mind that "surprise and prejudice are important integers in this calculus," he may not now, at the eleventh hour, comment on Dr. Bloom's opinion. *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003); *see also Thibeault v. Square D Co.*, 960 F.2d 239, 246–47 (1st Cir. 1992) ("Many courts—this court included—have recognized that the introduction of new expert testimony on the eve of trial can be seriously prejudicial to the opposing party.").

Defendants also contend that because "there have been cases that the Court has ordered the plaintiffs' and defendants' expert reports be provided simultaneously," Dr. Rodríguez was not required to refer to Dr. Bloom's report in forming his opinion. As such,

they maintain that "[t]here is nothing that would bar an expert from hearing the testimony of another expert in [t]rial and then commenting on the same when he or she is called upon to testify." (**ECF No. 72 at 7 ¶ 18**). This argument is also unpersuasive.

The situation they pose is far from the reality of this case. The expert reports were not provided simultaneously in this action. They were produced in a staggered way, to afford the experts the opportunity to have each other's report with sufficient time to comment on each other's opinions. Defendants had more than enough time to supplement their disclosures if they wanted to, so that Plaintiffs would not suffer exactly what Fed. R. Civ. P. 26 is meant to prevent, a "trial by ambush." *Curet-Velázquez,* 656 F.3d at 56. Defendants' position fails to account for Rule 26's intention which is "to provide opposing parties reasonable opportunity to prepare for effective cross-examination" and potentially arrange for expert testimony from other witnesses. *See Rodríguez*, 2015 WL 1138256, at *6. Given the ample time Defendants had to review Dr. Bloom's report and potentially supplement their expert's disclosures, their failure to do so cannot now be done without gaining an "unfair tactical advantage" at trial. *See Prouty v. Thippanna and McNally v. Riis*. Accordingly, Plaintiffs' request as to this point is **GRANTED**.

Turning to Plaintiffs' second request, Plaintiffs allege that Dr. Rodríguez's testimony is not only not helpful to the jury but will also confuse them as to the issues of the case. (**ECF No. 64 at 5-6**). Citing Fed. R. Evid. 702(a), Plaintiffs contend that expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue," of which they assert his testimony will not. *Id*. at 5. As such, they request he be barred from testifying altogether.

The First Circuit has held that "[a]s long as an expert's scientific testimony rests upon good grounds, it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Wetherell v. Hosp. Interamericano De Medicina Avanzada*, 06-cv-2079, 2009 WL 564200, at *3 (D.P.R. Mar. 5, 2009) (citing *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) (internal quotations omitted) (cleaned up). As a reminder, Plaintiffs do not challenge Dr. Rodríguez's qualifications as an expert, nor do they challenge the sufficiency of his testimony. Plaintiffs' only challenge is its relevancy to the matter at hand.

Dr. Rodríguez reviewed Rodríguez's 813-page medical record in forming his opinion. (**ECF No. 72 at 6 ¶ 16**). In his report, he addresses the inherent risk of IVC punctures when performing ablations, as well as the informed consent form Plaintiff signed before undergoing the procedure. (**ECF No. 64-2**). Both are issues go to the core of this medical malpractice claim. Bearing in mind that an "exclusion pursuant to Rule 403 is an extraordinary measure that should be used in limited situations," the Court will exercise its "wide discretion" and permit the testimony of Dr. Rodríguez, but only as to his conclusions. *Bado-Santana v. Ford Motor Co.*, 364 F. Supp. 2d 79, 89 (D.P.R. 2005) then citing *Ellicott v. Am. Capital Energy, Inc.*, 906 F.3d 164, 172 (1st Cir. 2018). "To the extent [Plaintiffs] wish[] to challenge Dr. [Rodríguez's] expert opinions, instead of exclusion, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ceballos-Germosén v. Sociedad Para la Asistencia*

*Legal*, 16-cv-02944, 2022 WL 16541247, at *4 (D.P.R. Oct. 28, 2022) (internal citations and quotations omitted). Plaintiffs' request as to this point is therefore **DENIED**.

### b. Defendants' First Motion in Limine

Moving to Defendants' Motions in Limine, the first seeks the exclusion of any reference to what Defendants argue is a new case theory being introduced by Plaintiffs. (**ECF No. 79**). In essence, Defendants seek preclusion of any reference to the alleged "unnecessary and unconsented *atrial flutter* ablation" performed by Dr. Abreu on Rodríguez. (**ECF No. 79**). Defendants maintain that these allegations constitute amendments this Court previously "dismissed" in denying Plaintiffs' second request for leave to amend their Complaint.[5] (**ECF No. 48**); (**ECF No. 49**). As such, Defendants argue Plaintiffs are "attempting to circumvent the Court's ruling," and any reference to these allegations must be excluded. *Id*. The Court disagrees.

Plaintiffs' purported new theory of the case is well within the operative Complaint. A well-pleaded complaint only needs to provide a short and plain statement of the claim showing that the pleader is entitled to relief. *See Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 543 (1st Cir. 2021) (citing Fed. R. Civ. P. 8(a)(2)). Plaintiffs have met this, particularly given the bar for meeting this requirement is "low." *Id*.

The operative Complaint alleges that Defendants are liable for the "negligent and careless manner in which Dr. Abreu-García performed the heart ablation" on Rodríguez. (**ECF No. 19 at 4 ¶ 24**). More specifically, Plaintiffs aver that Dr. Abreu punctured Rodríguez's IVC, requiring him to undergo open heart surgery which resulted in intense physical pain and mental anguish, as well as a permanent scar on his chest. *Id*. ¶ 18; *Id*.

---

[5] Plaintiffs' request to amend included new claims of battery and assault. (**ECF No. 48**). The Court thus denied leave. (**ECF No. 49**).

at 5 ¶ 28. Accordingly, Plaintiffs' allegation that Dr. Abreu negligently performed *an ablation* on Rodríguez suffices to give Defendants adequate notice of the claim against them, that being, that Dr. Abreu performed *an ablation* negligently. *Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87, 91 (1st Cir. 2014) (a Complaint's "substance and structure must give the defendants notice of the nature of the claim against them.") (internal citations and quotations omitted). The later distinction between *atrial flutter* and *accessory pathway* ablations does not change the case theory or constitute a new claim for liability. It simply clarifies what ablation Plaintiffs take issue with. *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 517 (1st Cir. 2016) ("A high degree of factual specificity is not required at the pleading stage."); *see also Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 718 (1st Cir. 2014) (a "complaint need not plead facts sufficient to establish a prima facie case, *or allege every fact necessary to win at trial* . . . The prima facie standard is an evidentiary standard, not a pleading standard, and there is *no need to set forth a detailed evidentiary proffer* in a complaint.") (emphasis added). Defendants' contention that the Court in effect dismissed Plaintiffs claims when it denied them leave to amend is unconvincing. (**ECF No. 79 at 7 ¶ 12**). They have provided no case law to support this argument, and the Court did not address the merits of anything proposed in Plaintiffs' request.

Moreover, Defendants have been on notice of the theory of Plaintiffs' case for quite some time. As mentioned, Dr. Bloom's report was provided to Defendants on June 15, 2023, which clearly outlines Plaintiff's theory of the case and the basis for the alleged malpractice. (**ECF No. 64 at 3 n. 2**). Defendants then had the opportunity to have their expert witness examine Dr. Bloom's report before he issued his. They also deposed Dr. Bloom on November 16, 2023, after the discovery deadline had been extended four times.

(**ECF No. 64-4**); (**ECF Nos. 27, 35, 44, 55**). Finally, the Joint Proposed Pretrial Memorandum was filed on December 22, 2023, in which the parties discussed their case theories at length. Defendants raised no objections to Plaintiffs' theory of the case. (**ECF No. 71**). "While parties should be protected from surprise based on changes in the theory of a case, the bottom line is fair notice to the opposing party of the claims asserted against him." *Acevedo-Martínez v. Coatings & Co.*, 286 F. Supp. 2d 107, 113 (D.P.R. 2003) (citing *Rodríguez v. Doral Mort. Corp.*, 57 F.3d at 1171 ("The bottom line is simply this: while courts should construe pleadings generously, paying more attention to substance than to form, they must always exhibit awareness of the defendant's inalienable right to know in advance the nature of the cause of action being asserted against him.")). Defendants simply cannot feign surprise at this juncture. They have been on notice of Plaintiffs' theory since at least June 15, 2023, and were given ample time to adequately prepare their defense. They may not now, by way of the instant motion in limine, object for the first time to something that should come as no surprise. Their first motion in limine is therefore **DENIED**.

### c. Defendants' Second Motion in Limine

Defendants' second motion in limine seeks to exclude any evidence relating to Plaintiffs' claim for punitive damages. (**ECF No. 80**). In so seeking, Defendants maintain that Plaintiffs have not proffered any evidence to sustain a claim for punitive damages, and as such, they would be unfairly prejudiced by the suggestion of its availability to the jury. (**ECF No. 80**). The Court disagrees.

As this is a diversity action, Puerto Rico law governs the substance of Plaintiffs' claims. *See Alemán-Pacheco v. Universal Grp., Inc.*, 638 Fed. Appx. 15 (1st Cir. 2016). Article 1538 of the Puerto Rico Civil Code of 2020 states that:

> The reparation of damages shall be made monetarily, by way of the specific reinstatement or a combination of any previous remedies, at the choice of the injured party, as long as there is no duplication of compensation.
>
> However, whenever the act or omission constitutes a crime, is committed intentionally or with serious disregard for the life, safety, and property of others, the judge[6] may impose additional compensation that shall not be greater than the amount of damage caused.

(**ECF No. 83-1 at 1**); *see also* 31 L.P.R.A. § 10803. Accordingly, the law is clear that Plaintiffs, upon making the requisite showing, are entitled to punitive damages. The Court will not usurp the role of the jury by weighing the evidence before it comes before the trier of fact and make a determination that Plaintiffs are not entitled to a certain form of damages. This plainly, is an issue for the jury and whether, upon evaluating the evidence proffered by Plaintiffs, they determine compensatory damages and punitive damages are warranted. Defendants will be able to safeguard themselves from a meritless award of punitive damages by way of proper jury instructions. Defendants' second motion in limine is therefore **DENIED**.

## III.  Conclusion

In sum, Defendants' expert Dr. Rodríguez is permitted to testify but is precluded from testifying to beyond what is in his report. This includes any reference to Plaintiffs' expert Dr. Bloom's report, opinions, and conclusions. Plaintiffs are permitted to present a claim for and evidence of punitive damages to the jury, subject to a proper jury instruction of the requisite standard. Plaintiffs' Motion in Limine (**ECF No. 64**) is

---

[6] *See Marshall v. Pérez-Arzuaga*, 828 F.2d 845, 849 (1st Cir. 1987) ("Since Puerto Rico, a civil law jurisdiction, never uses juries in civil cases, there is of course no Commonwealth law on this subject. The Seventh Amendment, however, most decidedly affords litigants in federal court in Puerto Rico the right to trial by jury." (internal citations and quotations omitted)).

Civ. No. 21-01622 (MAJ)   Page 12

therefore **GRANTED IN PART** and **DENIED IN PART**, and Defendants' Motions in Limine are **DENIED** (**ECF Nos. 79, 80**).

 **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of February 2024.

        **_/s/ María Antongiorgi-Jordán_**
        **MARIA ANTONGIORGI-JORDÁN**
        **UNITED STATES DISTRICT JUDGE**